SCHNEIDER v. VOSBURGH.

1. WILLS—TESTAMENTARY CAPACITY.
  In determining testamentary capacity, the law requires, not so much any particular character of intellect, as the ability to make the effort of mind and memory necessary to remember what property testator has, to consider who have claims upon it, and to know what disposition he is making of it.

2. SAME—MENTAL WEAKNESS—EFFECT.
  Although mere weakness of mind does not generally incapacitate a person from making testamentary disposition of his property, yet he cannot dispose of property, the possession of which he but barely appreciates, among parties whose relations to him he knows, but does not understand, but, if he has the requisite mental capacity, he may make either a will or a deed as eccentric, injudicious, or unjust as caprice, frivolity, or revenge can dictate.

3. SAME—UNDUE INFLUENCE—EFFECT.
  The question of mental capacity to execute a testamentary instrument depends largely on the question of undue influence, and, if no such influence is shown, a degree of capacity will be regarded as adequate which would not be so regarded if it were unduly acted upon.

4. SAME—EXTENT OF INFLUENCE.

In order to sustain a deed or a will as against a charge of undue influence, it is not necessary that an absolute freedom from influence be shown, but the question is whether the testator's or grantor's mind has been overcome.

5. SAME—ABILITY TO EXERT MIND.

Weakness of mind and forgetfulness are not sufficient to invalidate a will or deed, if it appears that the testator's or grantor's mind was capable of attention and exertion when aroused and was not imposed upon.

Appeal from Kent; Perkins, J. Submitted February 28, 1906. (Docket No. 209.) Decided March 27, 1906.

Bill by Hugo A. Schneider, special administrator of the estate of William Livingston, deceased, against Charles F. Vosburgh and Jennie Vosburgh to set aside a deed. From a decree dismissing the bill, complainant appeals. Affirmed.

*L. E. Carroll* ( *George E. Nichols* and *M. A. Nichols* of counsel), for complainant.

*E. C. Watkins* (*E. J. Doyle*, of counsel), for defendants.

OSTRANDER, J.   We agree that this case was rightly disposed of below, and adopt, for a statement of facts and of conclusions, the following opinion of the trial judge:

" In this case a bill was filed by the special administrator to set aside a certain deed executed by William Livingston, since deceased, conveying to the defendants a certain house and lot in this city, valued at about $3,500, on the ground of undue influence and mental incompetency.

"The defendant Charles F. Vosburgh is a nephew of the deceased, and with whom the deceased lived during the last two years or thereabouts of his life. The contestant in the case is a brother of the deceased, who lives in New York State, and whom the deceased had not seen for at least 40 years before his death.

" The deceased was about 70 years of age at the time

he executed the deed in controversy, and was in very feeble health. For some years prior to his death he had been addicted to the use of intoxicating liquors, and at one time had suffered an attack of delirium tremens. The immediate cause of his last sickness was a stroke of paralysis or apoplexy, which interfered materially with the use of his vocal organs. He had two strokes; the first taking place on or about the 17th day of March, 1904, and the last one during the latter part of the month of April following. He died May 11, 1904.

" The deed in controversy was executed April 6, 1904, while the deceased was ill and confined to his bed. On March 19, 1904, a few days after his first attack, he had made and executed his last will and testament. On the 6th of April following he sent for an attorney for the purpose of making a deed which would dispose of his entire property, and it is this deed, executed on that day and under the circumstances shown, which is claimed by the complainant to be void as the result of mental incompetency, and because of the undue influence exercised upon the deceased, at and before the time the deed was so executed, by the defendants Vosburgh. There is no doubt about the precarious condition of the deceased's health at the time this deed was executed. There is no doubt, also, under the proofs, that his mind was in a somewhat enfeebled condition.

" The rule applicable to cases of this kind is well established by the great preponderance of authority. The rule may be stated to be that the law requires, in determining mental capacity, not so much any particular of character of intellect as the ability to make certain efforts of the mind and memory. These are stated variously, but the cases concur in the same general results, namely, that the party must be able to remember what property he has, to consider who have claims upon it, and to know what disposition he is making of it. Delusions affecting any one of these subjects will destroy capacity, and when delusions are shown this is said to be the best test; but in the case at bar there are no delusions shown which would affect the conveyance by the deceased of his property. Although mere weakness of mind does not generally incapacitate, yet one cannot dispose of his property the possession of which he but barely appreciates among the parties whose relations to him he may know, but does not understand. On the other hand, if he has the capacity

indicated, nothing can prevent him from making either a will or a deed as eccentric, as injudicious, or as unjust as caprice, frivolity, revenge can dictate.

"As in the case of contracts, issues such as are formed in the case at bar largely depend on the question of undue influence by others. If no such undue influence is shown to have been exercised, a degree of capacity will be regarded as adequate to make a deed or a will when the same degree of capacity would be regarded as inadequate were it unduly acted upon by force or fraud of others. The question is: Was the document in question the grantor's deed, or, in the case of wills, the testator's will? If he had a disposing mind, no matter how feeble, and this disposing mind was allowed freedom in its play, then the will is to be sustained, and the same is true if the instrument is a deed, as in the case at bar. But, if he was defrauded or coerced by those about him, then the deed or the will is to be set aside, no matter how high may have been the standard of his capacity. The lower the degree of intellect, the less the amount of proof of fraud or of coercion is required to set the deed or the will aside.

"Again, it is not necessary in order to sustain either a deed or a will that there should be an absolute freedom from influence shown. There is no testator or grantor under the circumstances shown in this case absolutely free from influence. The test is: Were such influences applied as to take away his freedom of disposition? If so, if his will was overcome by force, either physical or moral, or perverted by fraud, then a testamentary disposition of the property or a deed so made cannot stand.

"Weakness of mind and forgetfulness, therefore, are not sufficient to invalidate a will or deed, if it appears that the testator's or the grantor's mind was capable of attention and exertion when aroused, and was not imposed upon. It has been truly said that the weak have the same right with the prudent and strong-minded to dispose of their property. In general, so that capacity exists, courts will not undertake to measure the degree of that capacity, and they will protect those deficient in strong natural ability in the exercise of the powers they possess. Eccentricity, unless it take the form of monomania, will not incapacitate a man from making a will or a conveyance of his property.

"Under these well-recognized rules, which are summarized from the various cases on this subject, I am satisfied:

"1. That there is no proof which would authorize the court to find that the grantees in this deed, or either of them, exercised, or sought to exercise, any undue influence upon the deceased in relation to his execution of this deed.

"2. While the deceased was in a feeble condition of health and his mental powers not as active as in former years, the proof satisfies me that he had sufficient mental capacity to understand the nature of the act he was about to undertake, the nature and extent of the property he was about to dispose of, as well as the names and identity of the persons who were the objects of his bounty, and his relations toward them. During his declining years he had found a home with the defendants, and, while he had paid a small amount for his board, yet the proofs show that, notwithstanding the great care required to attend to his various wants, the best of feeling existed between the defendants and the deceased the whole time he was with them and down to the time of his death. There is no particular reason that the deceased should have wished his property to have gone to his brother, whom he had not seen for 40 years, but there is every reason to believe that the only rational desire he could have had must have been to bestow that property upon those who had been kind to him in his last years and had taken care of him during his last sickness.

"The conclusion is that the bill of complaint in this cause should be dismissed, with costs."

The decree is affirmed, with costs.

CARPENTER, C. J., and McALVAY, BLAIR, and MOORE, JJ., concurred.