## AKERS v. MEAD.

1. Deeds—Evidence—Undue Influence—Competency.

   In reviewing, on appeal, a decree of the circuit court involving issues of fact relative to the validity of a deed of decedent to his daughter, evidence considered in the light of the presumptions arising from the opportunity possessed by the circuit court to hear and see the witnesses, and *held*, to sustain the validity of the conveyance.

2. Same—Undue Influence.

   In order to sustain a deed it is not essential that absolute freedom from influence should appear; the question being whether such influence was exerted as to take away the grantor's freedom of disposition. Weakness of mind or forgetfulness are not sufficient to invalidate a will or deed, if it appears that the mind of the grantor was capable of attention and exertion when aroused and was not imposed upon. If capacity exists the court will not undertake to measure the degree of the capacity. Eccentricity, unless it take the form of monomania, will not incapacitate one from making a valid conveyance or will.[1]

---

[1]As to undue influence in conveyance or transfer of property in consideration of support of the grantor or a third person, see note in 52 L. R. A. (N. S.) 476.

Appeal from Ingham; Collingwood, J. Submitted June 30, 1915. (Docket No. 106.) Decided September 28, 1915. Rehearing denied December 22, 1915.

Bill by George W. Akers and others against Eva J. Mead to set aside a certain deed. From a decree for defendant, complainants appeal. Affirmed.

*L. B. Gardner* and *Frank L. Dodge*, for complainants.
*Cummins, Nichols & Rhoads*, for defendant.

STONE, J. In this cause the bill was filed to set aside a deed bearing date February 14, 1911, made and executed by Aaron K. Akers to the defendant, of all the real estate which he owned, upon the grounds that at the date of its execution Aaron K. Akers was mentally incompetent to execute it, and that the same was procured by the fraud and undue influence of the defendant. At the hearing there was no evidence that John F. Krumbak was the administrator of the estate of said Aaron K. Akers, and under the plea filed the bill was dismissed as to the administrator, and the case proceeded as between George W. Akers and Charles A. Akers, two of the four children and heirs of Aaron K. Akers, complainants, and the defendant, a third child and heir. The heirs of Belle Monroe, deceased, the other child and heir of Aaron K. Akers, are not parties to the suit.

The circuit judge, who heard the case, and heard and saw all of the witnesses testify, filed a written opinion, from which we quote as follows:

"The bill alleges: That said Aaron K. Akers was the father of complainants George W. Akers and Charles A. Akers, and of defendant Eva J. Mead. That the wife of Aaron K. Akers, who was the mother of the parties above named, died on the 17th day of January, 1911. That Aaron K. Akers died on the 22d day of February, 1911. That during his lifetime he

was the owner of certain real estate, described in the deed, a copy of which is attached to the bill of complaint. That after the death of Aaron K. Akers defendant Eva J. Mead claimed title to this real estate by virtue of a warranty deed, dated February 14, 1911, purporting to be signed by said Aaron K. Akers and duly recorded. That at the time when this deed was purported to have been executed said Aaron K. Akers was more than 80 years of age, and was at the time of making the deed in question utterly incompetent and mentally incapacitated to transact any business, and especially of knowing what he was doing at the time of executing the deed in question. That at the time when this deed was purported to have been made and executed said Aaron K. Akers was by reason of his age and circumstances, and while living with defendant, under the absolute control of and actually dominated by the said defendant Eva J. Mead, who wrongfully, unjustly, and fraudulently exerted over said Aaron K. Akers an undue influence, and obtained said deed without any valuable or adequate consideration. The bill prays that said deed be vacated, canceled, set aside, and held for naught, and the record thereof canceled.

"A large amount of testimony was offered by both the complainants and the defendant, and the life and surroundings of the Akers family, for the past 30 years, quite fully revealed. It was shown that at the time of his death Aaron K. Akers was about 86 years old; that up to about 30 or 40 years ago he had been somewhat intemperate, although since that time he had not used liquor of any kind. He was uneducated, being unable to read or write. For more than 50 years previous to the summer before his death, he and his wife had lived continuously on the farm described in said deed. For more than 30 years he had not been actively engaged in farming operations, but had rented the several fields. During that time he went often to Williamston, went about the neighborhood, both in a carriage and on horseback, and conducted the small affairs intrusted to him with more or less ability. The proofs show that he was an eccentric old man, with the physical and mental infirmities incident to age. During the summer of 1910 Aaron K. Akers and his wife went to live with the daughter, Eva J. Mead, on

her farm. While there he made a will. This will was afterwards declared to be void, for want of capacity in the maker, Aaron K. Akers, first by the probate court, and afterwards by a jury in the circuit court of this county. About the middle of January, 1911, while Mr. and Mrs. Aaron K. Akers were at the home of the defendant, Eva J. Mead, Mrs. Akers, the wife and mother, died. There is considerable testimony, both before and after the death of Mrs. Akers, regarding the condition of Aaron K. Akers. That he was a childish old man, physically, and at times mentally weak, is clearly established. But in the words of Justice CHRISTIANCY, in *Seeley* v. *Price,* 14 Mich. 545:

" 'The evidence fails to establish insanity, idiocy, or that degree of mental imbecility which would of itself render the grantor entirely incapable at the time of executing a valid deed.'

"It was shown by uncontradicted testimony that on the evening before the deed was executed Aaron K. Akers was in such possession of his faculties of mind that he declared his intention of deeding his property to his daughter Eva, and he could and did, from memory, and without prompting, give a full and accurate description of the lands in question. On the following day he executed the deed in the presence of two witnesses. These two men, without apparent prejudice, and without any interest in the case, were at the home of Eva J. Mead for the purpose of making and attesting this deed, if Aaron K. Akers were, in their judgment, competent to understand and make a deed. Each of the witnesses was a reputable and experienced man, one a lawyer and the other a physician. They went there prepared to test the competency of Aaron K. Akers to make a deed, and after talking with him they were satisfied. The testimony shows that the deed was drawn in his presence and read over to him twice, before he, in their presence, affixed his mark, and that in the opinion of these witnesses he could understand and did understand the provisions thereof. It is the opinion of this court that the deed in question was executed by Aaron K. Akers, and that at the time he was of sufficient mental capacity and ability to understand its provisions and to transact the business of transferring the real estate.

"Under the allegations of the bill, a second question arises: Did Eva J. Mead exert an undue influence on Aaron K. Akers, and secure this deed by fraudulently dominating his will? The provisions of the deed were such that Eva J. Mead, defendant, agreed to and was bound to suitably support and maintain Aaron K. Akers during his lifetime, and provide proper burial after his death. While at the date of the deed Mr. Akers was a feeble old man, and died in 10 days, his condition was such that he might have lived several months or even years. There is nothing in the testimony, or in the provisions of the deed, which would make its execution, under all the circumstances, unreasonable. The testimony shows that, during the past 30 years, the bonds of affection between the different members of the Akers family had been, at times, sadly strained. But there is nothing, as shown by the evidence, in the treatment of Eva J. Mead, defendant, especially during the past year of their lives, inconsistent with daughterly conduct. Aaron K. Akers might well have believed that, under all the circumstances, this was the best disposition he could make, for his own good, of his property.

"The court does not find the allegations of the bill sustained by the evidence. The bill is dismissed, with costs."

At the hearing we were in doubt whether the circuit judge had reached the correct conclusion. A careful reading of the voluminous record has satisfied us that his conclusion was warranted by the weight of the evidence. The testimony was very conflicting, and a careful and scrutinizing examination of it is necessary to reach a just conclusion. We have no doubt of the mental capacity of Mr. Akers at the time the deed was executed. The uncontradicted evidence shows that he knew what property he had, as well as the situation of the children and heirs. There is no doubt that the defendant had at all times treated both her father and mother with greater consideration than had the other children. The complainant Charles seemed to recognize that fact when, in a letter written to defendant on

January 23, 1911, upon hearing of the death of his mother, he said:

"I am certain you have done all you could for Ma and Pa, situated as you were, without any help. * * * I feel that you should have good pay for what you have done for them, as the rest of us have never done anything toward looking after them."

The defendant had had the full care of both parents. In the summer of 1910 the parents reached a time when they were no longer able to live alone and take care of themselves, and they went to live with defendant, and remained with her as long as they lived, and nobody claims that they were not properly cared for. It is true that Mr. Akers lived but a short time after he executed the deed, but his death was unexpected. Charles had been there in December and early in January, and, while he considered his father feeble, yet he wrote just following the father's death:

"It was a great surprise to me, as I thought he would live several years yet."

It is urged by complainants' counsel that the agreement by the defendant to care for her father was not binding upon her; she being a married woman. It is not necessary for us to discuss that question, for the reason that that part of the contract was in fact fully carried out and performed.

In our opinion, the question of undue influence is the most meritorious question in the case. We have examined the evidence bearing upon that subject with care. We shall not undertake to analyze the evidence upon that subject. Our conclusion is well expressed by the language approved by this court in *Schneider* v. *Vosburgh*, 143 Mich. 476, at page 479 (106 N. W. 1129, at page 1130):

"Again, it is not necessary, in order to sustain either a deed or a will, that there should be an absolute freedom from influence shown. There is no testator or

grantor, under the circumstances shown in this case, absolutely free from influence. The test is: Were such influences applied as to take away his freedom of disposition? If so, if his will was overcome by force, either physical or moral, or perverted by fraud, then a testamentary disposition of the property or a deed so made cannot stand.

"Weakness of mind and forgetfulness, therefore, are not sufficient to invalidate a will or deed, if it appears that the testator's or grantor's mind was capable of attention and exertion when aroused, and was not imposed upon. It has been truly said that the weak have the same right with the prudent and strong-minded to dispose of their property. In general, so that capacity exists, courts will not undertake to measure the degree of that capacity, and they will protect those deficient in strong natural ability in the exercise of the powers they possess. Eccentricity, unless it take the form of monomania, will not incapacitate a man from making a will or a conveyance of his property."

We have examined the cases cited by counsel; but, as we have often said, previous decisions are of little assistance in determining these questions, and each case must be determined upon its own facts. A man addicted to the habitual use of intoxicating liquors and tobacco, who voluntarily abandons the habits, and persists therein, and leads a temperate life for more than 20 years before his death, must be something more than a mere weakling. This Mr. Akers did. Many reasons may be gathered from the evidence, consistent with freedom of action, which induced Mr. Akers to make the disposition of his property which he did. A perusal of the testimony will disclose these reasons.

The decree is affirmed, with costs to the defendant.

BROOKE, C. J., and KUHN, BIRD, MOORE, and STEERE, JJ., concurred. McALVAY and OSTRANDER, JJ., did not sit.