BACHMAN *v.* BEACH.

1. DEEDS—MENTAL COMPETENCY—UNDUE INFLUENCE—EVIDENCE.
   In a suit to set aside a deed on the grounds of mental incompetency of the grantor and undue influence, evidence examined and *held*, insufficient to establish the allegations in the bill of complaint.

2. SAME—UNDUE INFLUENCE—OPPORTUNITY ALONE INSUFFICIENT.
   That the grantee in a deed had opportunity for the exercise of undue influence upon the grantor is not, standing alone, sufficient to establish its existence.

Appeal from Wayne; White (Charles E.), J., presiding. Submitted April 22, 1927. (Docket No. 3.) Decided October 3, 1927.

Bill by Albert C. Bachman and others against Marguerite Beach and others to set aside a deed. From a decree for plaintiffs, defendants appeal. Reversed, and bill dismissed.

*S. Homer Ferguson,* for plaintiffs.

*Frederick A. Schopp,* for defendants.

BIRD, J. This is a chancery proceeding to set aside a deed to a house and lot in the city of Detroit, made by Christine Bachman to her daughter, Marguerite Bachman. The reason alleged why it should be set aside was that Christine was mentally incompetent and was unduly influenced at the time she made the deed. At the conclusion of the hearing the trial court set the deed aside, and the defendants appeal.

The record discloses that Christine Bachman was a sturdy French woman, having been born and reared

[1]Cancellation of Instruments, 9 C. J. § 195; Deeds, 18 C. J. §§ 551, 552; [2]Id., 18 C. J. § 552; 8 R. C. L. 1034; 2 R. C. L. Supp. 708.

in France.    She and her husband had raised a large family, eight in number, six of whom are plaintiffs in this suit.    The youngest daughter, Marguerite, and her husband, Harry L. Beach, are defendants. One son, Sherman Bachman, is not a party to the litigation.

When Marguerite, the youngest daughter, was 14 years of age, she was taken out of school to care for the household and her mother, who had suffered a slight stroke of paralysis.    The rest of the family were all married and had homes of their own, save one son, Sherman, who resided with his mother.

Marguerite took charge of the household and cared for it, and attended to the wants of her mother. Sherman Bachman lived with them and paid his board. Marguerite attended to her mother's financial and banking business according to her directions.    She rented a part of the homestead and they received the sum of $35 per month, and this and the money which Sherman paid for his board was mainly what they had to depend on.    Matters went along in this way until 1923, when Christine had a second stroke of paralysis, which affected her left side.    This increased the duties and responsibility of Marguerite.    After that Christine was unable to do much physical work. Her mind, however, did not appear to be impaired. The stroke left her with an impediment in her speech. She sat on the porch and walked around in the yard, and did such work as her health would permit.

In 1923 the plaintiffs got the notion that their mother should live around with the children and the house either rented or sold, and they made an application to the Wayne probate court to appoint a guardian for her.    Christine employed Mr. James H. Lee, a very reputable attorney of Detroit, and a hearing was had and Christine was examined by the court, and the application was denied.    This appears to have made

Christine very angry, and soon after she sent for
Mr. Lee and requested him to make a deed of her
house to Marguerite.    The deed was made and read
over to her, and she signed it.    In signing it she re-
quested Marguerite to steady her hand, her malady
having made her hand unsteady.    Mr. Lee and his
wife witnessed the deed and it was afterwards placed
of record.    Christine stated, after she had signed it,
that Marguerite was a good girl and had taken
splendid care of her and she wanted her to have the
home to repay her for what she had done.    Both Mr.
and Mrs. Lee testified to her competency, and that they
saw nothing to indicate that she was in any way in-
fluenced by any one else.    Mr. Lee testified that
Christine sent for him and told him what she wanted
to do, and got her own deed and gave it to him so
he could get the description of the premises, and that
she did this without the aid of any one.

There were the usual number of witnesses on both
sides of the question.    Some thought she was in-
competent, while others were sure she was mentally
competent.    The witnesses for plaintiffs, aside from
those directly interested, complained chiefly that they
could not carry on a conversation with her; that she
mumbled her words.    It was in proof that her malady
had left her with a defect in her speech.    One of
plaintiffs' witnesses had had only one conversation
with her in seven years.    It is worthy of notice that
most of defendants' witnesses were near neighbors
and people who saw her almost daily.    In other words,
witnesses who would be apt to know what her true
condition was.

Plaintiffs fell far short of establishing that their
mother was mentally incompetent.    There was no
proof that Marguerite ever asked her for the home or
that she ever spoke to her mother concerning it.    Of
course, she lived with her and had the opportunity,

but we have said many times that opportunity of exercising undue influence is not enough.    *Severance* v. *Severance,* 90 Mich. 417; *Blackman* v. *Andrews,* 150 Mich. 322; *In re Williams' Estate,* 185 Mich. 97; *Hawthorne* v. *Dunn,* 210 Mich. 176.

The trial judge appeared to be influenced by the fact that Christine deeded away her little home, all the property she had, without reserving a life estate. We have said on more than one occasion that, when that was done by an elderly person in reliance upon oral contract for care and it was not carried out, it was a fraud upon the grantor, but this situation differs from those cases.    In this case Marguerite's promise to care for her mother was carried out to the letter. No one claims that she did not do her full duty in that respect.    The neighbors and people who were informed all joined in saying that Marguerite took fine care of her mother, and, evidently, the mother appreciated this, as she said she wanted Marguerite to have the little home to pay for the care she had given her.

The rest of the family were away, and there was no proof that they ever did anything for her welfare. One of her sons lived next door to her and he refused to speak to her, yet he is willing to join in a lawsuit to get some of the property which she left.    The case has all the appearance of one that is becoming quite common these days, of heirs suddenly being convinced, upon the death of their parents, that they were mentally incompetent or unduly influenced, when they learn that they were not given what they expected.

The decree of the trial court will be reversed and the bill dismissed, with costs of both courts to defendants.

SHARPE, C. J., and STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.    SNOW, J., did not sit.