BERTHUINE v. SCEWCZYK.

1. PROPERTY—MENTAL CAPACITY—FRAUD—UNDUE INFLUENCE.
   Persons mentally competent so to do, may, when free from fraud
   and undue influence, dispose of their property as they desire.

2. DEEDS—UNDUE INFLUENCE.
   Undue influence, to warrant setting aside a conveyance, must be
   sufficient to overcome the free agency of the grantor and sub-
   stitute the will and intention of someone else in place of that
   of the grantor.

3. SAME—FRAUD—UNDUE INFLUENCE—EVIDENCE.
   Fraud and undue influence are seldom capable of direct proof
   and are generally established as an inference from the facts
   and circumstances of the case.

4. SAME—SETTING ASIDE CONVEYANCES—EVIDENCE.
   In deciding cases involving the matter of setting aside con-
   veyances, each case must be determined on its own facts,
   previous decisions being of little assistance.

5. SAME—SALES—MENTAL COMPETENCY—FRAUD—UNDUE INFLUENCE
   —EVIDENCE.
   In suit by plaintiff, administrator of illiterate widow's estate
   and guardian of her minor children, against oldest daughter to
   whom widow had conveyed her 40-acre farm and executed a
   bill of sale of personalty about a month before death while
   in bed at a hospital, evidence sustained finding that grantor
   then had the mental capacity to execute the conveyances and
   that their execution was not the result of fraud or undue in-
   fluence by defendant daughter and others who were alleged to
   have participated in the transaction.

Appeal from Bay; Leibrand (Karl K.), J. Sub-
mitted January 8, 1947. (Docket No. 25, Calendar
No. 43,488.) Decided April 8, 1947.

Bill by Floyd Berthuine, administrator of the estate of Angeline Scewczyk, deceased, against Helen Scewczyk and others to set aside a deed and for an accounting. On motion Mary Berthuine and Frances, Frank, Catherine and Paul Scewczyk were added as parties plaintiff. Decree for defendants. Plaintiffs appeal. Affirmed.

*B. J. Henderson (Joseph J. Favazza,* of counsel), for plaintiffs.

*Smith & Brooker,* for defendants.

Bushnell, J. Angeline Scewczyk, a widow residing in Pinconning township, Bay county, died on October 29, 1944, leaving as heirs at law her children, defendant Helen, age 27; plaintiffs Mrs. Mary Berthuine, age 26; Frances, age 18; Frank, age 18; Catherine, age 16; and Paul, age 14. Other parties to this litigation are Mary's husband, Floyd Berthuine, who was appointed special administrator of the estate of Angeline, and Sidney Ribeaud and Agnes, his wife. The latter were joined as defendants under the theory that they had conspired with Helen to induce Angeline to convey all of her real and personal property to Helen for the purpose of "defeating the heirs at law and the creditors of said Angeline Scewczyk of their just and legal rights."

The record indicates that Mrs. Scewczyk maintained and provided for her family by the operation of her 40-acre farm. Sometime in 1944 Mrs. Scewczyk became seriously ill and on September 26th of that year was taken to a hospital in Bay City.

About 6 months before she entered the hospital, Mrs. Scewczyk consulted Stanley Resmer, the assistant cashier of the Pinconning State Bank, about

transferring her property to her son, Frank. Her thought then was to reserve a life interest in the property or have an agreement with Frank to "support her and take care of the minor children until they were 21." Resmer advised her to consult a lawyer.

Helen Scewczyk had lived with the defendants Ribeaud for the last 14 years, during which time she was employed by them either in their home or their grocery store. During this time she rendered some financial assistance to her mother and the family. The Ribeauds live about 20 miles from the Scewczyk farm. Helen first learned of her mother's illness from the attending nurse. When she and Mrs. Ribeaud called at the hospital, according to Helen, her mother told her that she wanted her to have the farm so that the small children would be cared for, and explained why she did not want the property to go to anyone else. Her mother suggested that she arrange to have someone prepare the necessary papers. At the same time she told Helen about a tin box containing moneys, part of which belonged to Frank, who then was in the army, and the remainder was to be used to pay funeral expenses. Helen brought the money to the hospital, and it was counted in her mother's presence. A few days later, Helen returned to the hospital with Thomas E. Cavanaugh, an acquaintance of the Ribeauds, who was in the real estate and insurance business. At the suggestion of the Ribeauds and at the request of Helen, Cavanaugh had prepared a deed conveying the farm to Helen. When it was discovered that the deed did not convey title to the livestock on the farm, Cavanaugh prepared a bill of sale. Both instruments were signed by Mrs. Scewczyk by affixing her mark. The deed, dated September 28, 1944, was witnessed by Cavanaugh and one

E. J. Carter, and the bill of sale, dated October 2, 1944, was witnessed by Cavanaugh and Agnes Ribeaud. Mrs. Scewczyk died on October 29, 1944.

About three months after the death of Mrs. Scewczyk, the younger children, who had remained on the farm, left, apparently voluntarily, to live with their sister, Mrs. Berthuine. Helen then took possession of the cattle and sold them.

Plaintiff Floyd Berthuine, as administrator and guardian of the minor children, together with his wife, sought a decree setting aside the deed and bill of sale on the ground that they had been fraudulently obtained and were without consideration.

At the trial, Resmer testified that he had known Mrs. Scewczyk for about 10 years and saw her frequently; that she would occasionally borrow money, cash checks, and transact other business. He was of the opinion that she "knew the legal implications of these things, about transferring the property and keeping a life interest." The attending physician and nurse both testified regarding the physical and mental condition of Mrs. Scewczyk. Their opinion was that Mrs. Scewczyk was in a conscious and rational state during the time when the instruments in question were executed. The hospital records do not show that any opiates had been administered on these occasions.

The trial judge filed a written opinion in which he said in part:

"Deceased could not read or write either in Polish or English. Despite these handicaps she demonstrated her ability over the years to raise her family and manage the farm. She could not carry on a running conversation in English, but could understand and brokenly speak the more common English words and phrases. She paid her own taxes, cashed

checks, effected loans at the bank, where she signed notes by mark, and personally held and disbursed the family income. In doing business with persons who did not speak Polish, one of the children usually acted as interpreter.     *     *     *

"Considering the surrounding circumstances, deceased's disposition of her property was not unnatural. She had discussed a somewhat similar arrangement with Mr. Resmer several months before. She obviously felt there was a probability of her imminent death. Four of her children were minors, and the fifth was married and primarily concerned with her own family. Defendant, Helen, was her oldest child and the one most experienced in business. Whether deceased was wise in conveying all of her property to Helen, relying on Helen's oral promise and presumed affection for her brothers and sisters to provide for them is not for this court to decide. This court can only pass upon her capacity to convey and decide whether or not such conveyances were procured by fraud or undue influence.

"Fraud or undue influence cannot be presumed, but must be proven by satisfactory evidence. It is well recognized law that proof of opportunity to exercise fraud or undue influence is not enough. In the opinion of the court the established facts in this case bring it within the line of decided cases exemplified by *Olson* v. *Rasmussen,* 304 Mich. 639; *Gaffney* v. *Bliven,* 203 Mich. 54; *Grand Rapids Trust Co.* v. *Atherton,* 276 Mich. 56; *Bachman* v. *Beach,* 240 Mich. 342."

On appeal we are asked to vacate the decree entered, on the ground that the trial court erred in not setting aside the deed and bill of sale, or, in the alternative, failing to declare a constructive trust. Decision in the instant case is controlled by a determination of the intent and mental competency of

Mrs. Scewczyk, and whether or not she was unduly influenced in the execution of the instruments or whether such execution was fraudulently procured.

"Persons mentally competent so to do, may, when free from fraud and undue influence, dispose of their property as they desire.

"Undue influence, to warrant setting aside a conveyance, must be sufficient to overcome the free agency of the grantor and substitute the will and intention of some one else in place of that of the grantor.

"Fraud and undue influence are seldom capable of direct proof. They are generally proven and established as an inference from the facts and circumstances of the case." *Connor* v. *Harris,* 258 Mich. 670, 676.

The applicable tests are found in *Re Hartlerode's Estate,* 183 Mich. 51, and *Connor* v. *Harris, supra.* However, as said in *Akers* v. *Mead,* 188 Mich. 277:

"Previous decisions are of little assistance in determining these questions, and each case must be determined upon its own facts."

We do not repeat what was said in *Francisco* v. *Heaslip,* 273 Mich. 444, regarding the burden of proof, because it was recently quoted in *Olson* v. *Rasmussen,* 304 Mich. 639, 650.

A careful review of the testimony requires the same conclusion that was reached by the trial judge, *i.e.,* "that Angeline Scewczyk had the mental capacity to execute the questioned conveyances and that their execution was not induced by the fraud or undue influence of defendants."

The decree dismissing plaintiffs' bill of complaint is affirmed, with costs to appellees.

CARR, C. J., and BUTZEL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.