NAVARRE *v.* RAUPP.

CANCELLATION OF INSTRUMENTS—DEEDS—UNDUE INFLUENCE—EVIDENCE.
> Evidence *held*, to justify finding that deed was executed ·by aged mother during last illness to two of her seven children because of undue influence on the part of one of them named therein as grantee.

Appeal from Wayne; Campbell (Allan), J. Submitted April 18, 1934. (Docket No. 144, Calendar No. 37,798.) Decided June 4, 1934.

Bill by Harriet C. Navarre and others against Robert R. Raupp and others to set aside a deed. Decree for plaintiffs. Defendants appeal. Affirmed.

*Earl E. Montie* and *George D. O'Brien,* for plaintiffs.

*William L. Thorp* and *Ignatius J. Salliotte,* for defendants.

NELSON SHARPE, C. J. Gustave A. Raupp, an old-time resident of the village of Ecorse, died on March 29, 1923. He left him surviving his widow, Celina Raupp, and seven children, the plaintiffs and defendants herein, with the exception of Marie A. Raupp, who is the wife of Christopher A. Raupp. In his will he appointed his three sons, Christopher, Robert and Leo, the executors thereof. He owned a sawmill property at the time of his death. His executors continued to operate it for some time thereafter, but unsuccessfully. Later, partition proceedings were had, and the family property divided.

In this division an undivided one-third interest in the mill property was given to the widow and to Robert and Christopher, hereafter called the defendants.

In the month of August, 1932, the widow, then 71 years of age, took a trip by bus to Bay City to visit her sister. She returned on the 26th somewhat depressed, as her sister had passed away before she arrived. Soon after, she was confined to her bed. Charlotte Montie, a practical nurse then attending her, testified:

"She was irrational at times. But, she would know—at times, as I told you before, at times she would know things, and at times she would not. But, after she had the chill on Friday, the temperature went up and I saw a big change. Then, on Monday, she took another chill and her temperature went up, Monday afternoon, around two o'clock, the temperature went up to 105. I called up the doctor and he said there was nothing he could do. It would not be necessary to come over, just to bathe her and bring the temperature down."

The Monday referred to was the 5th day of September, and her condition was then such that a full time nurse, Margaret Oulette, was employed. Her daughter, Harriet, and her son Herschel, who lived with her, were also in attendance upon her at that time. On September 8th she executed a deed of her interest in the mill property to her sons Robert and Christopher, reserving a life estate therein to herself. She passed away on September 10th. The bill of complaint herein was filed to vacate and set aside this deed on the ground of her mental incapacity and the undue influence exercised over her by the defendants to secure its execution.

The trial court, after hearing the witnesses, found "that had it not been for the will of Christopher,

imposed upon the old lady, within less than two days of her death, this deed would not have been executed,'' and entered a decree vacating and setting it aside, from which the defendants have appealed.

We are satisfied that the preponderance of the evidence sustains the finding of the court. It appears that the partition proceedings were had in May, 1930. Christopher testified that ''immediately after the settlement of my father's estate'' his mother said to him in the presence of his brother Robert, when talking about the mill property, ''that we should have a deed drawn up any time and that she would sign it and deed it over'' to them. His mother was then advanced in years, and it seems strange indeed that nothing was done about it until she was confined to her bed in her last illness. While the deed, and its acknowledgment, is dated September 7th, it is conceded that it was not executed until the morning of September 8th.

Christopher also testified that on September 4th his mother said to him, ''Chris, have you got those papers made out for the mill property yet?'' and that she then expressed a desire to execute a deed; that later he told her that he had had the deed prepared and an attorney would be over in the evening to have it executed, and that a notary came the next morning and the deed was formally executed. He had it recorded on the following day.

The nurse, Margaret Oulette, who was in attendance on the mother at the time, heard no conversation about the making of a deed. She testified that when the notary who took the acknowledgment came in on the morning of September 8th, Christopher ''explained to her what this paper was for, and she asked for her glasses, and then she wanted a cup of tea. She was quite weak. She wanted to be left alone. She did not like to be bothered. I think I

put the pen in her hand and she was told the 'X' would be all right. So, she made the X.''

She also testified that after Mrs. Raupp had the tea and her glasses ''she wanted to rest after that. They asked if she would sign it, and she wanted to wait until later on. * * * She was very weak, and she did not want to be bothered. She did not want anybody to bother her;'' that Christopher at that time asked where Herschel, a brother who was living in the house with his mother, then was, and she told him, ''He is outside,'' and he then said, ''Hurry up and get this over with.''

The deceased was a member of the Roman Catholic church. In the early morning of the day the deed was executed, a priest came to see her and administered the last rites of the church. She was not at that time able to make a confession. Dr. Roberts, who had been attending her, called to see her before noon on that day. He testified that Christopher then had the deed ''and he asked if I would get her to identify it. So, I aroused her and asked if she knew what it was, and she said that she did. I asked her what it was. It was a deed to property. She said 'Yes I signed it; I did not want to be bothered'—no. 'I didn't want to have trouble.' I believe that is what she said.''

The trial court heard and saw the witnesses who testified. Without further review of the evidence, we are satisfied that it justified the finding that the deed was executed because of the undue influence brought to bear upon the deceased by her son Christopher.

The decree is affirmed, with costs to appellees.

POTTER, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred. BUSHNELL, J., did not sit.