FRANCISCO v. HEASLIP.

1. DEEDS—INCOMPETENCY—BURDEN OF PROOF—EVIDENCE.
Special administrator, in seeking to set aside deed by his decedent to defendants on ground of grantor's mental incompetency and grantees' undue influence, has burden of proving charge by a preponderance of evidence and if testimony does not prevail in plaintiff's favor or is so evenly balanced as to leave the question of doubt, plaintiff must fail.

2. EVIDENCE—INFERENCES—UNDUE INFLUENCE—OPPORTUNITY.
Undue influence may not be inferred from mere opportunity to exercise it.

3. DEEDS—COURTS.
Courts are not permitted to make equitable distribution of property but are concerned only with giving effect to the legal acts of decedents.

4. Same—Evidence—Mental Competency—Undue Influence.

   In suit to set aside deed of 10 acres of land from aged grantor to man and wife in their thirties in return for latter's reluctantly made promise to provide him with a home, keep premises in repair and insured and assume $200 mortgage thereon, evidence *held*, insufficient to sustain charges of mental incompetency on part of grantor or undue influence on part of grantees.

Appeal from Monroe; Golden (Clayton C.), J. Submitted October 8, 1935. (Docket No. 16, Calendar No. 38,505.) Decided November 12, 1935.

Bill by George W. Francisco, special administrator of the estate of Irving F. Hawley, deceased, against Laverne Heaslip and wife to set aside a deed on grounds of mental incompetency and undue influence. Decree for plaintiff. Defendants appeal. Reversed and bill dismissed.

*William F. Haas*, for plaintiff.

*Francis T. Ready*, for defendants.

Bushnell, J. Irving Hawley, a widower, about 80 years old, conveyed by warranty deed a 10-acre parcel of land to defendants in February, 1934, and died several months later. The deed which reserves a life estate to the grantor recites a nominal cash consideration and states that grantees as a part of the consideration "agree to provide for first party a home in said premises as long as he shall live and further agree to maintain said premises in a good state of repair, to keep it insured and to assume the first mortgage in the sum of $200." Mr. Hawley lived on "the old homestead" with his two sons, John, aged 55, and Samuel, 50, neither of whom were married, the latter having lost both his legs during childhood. The 10 acres is not a part of the "old

homestead." The sons worked the farm and the father loaned some money to various parties, collecting the interest with the assistance of plaintiff who was his business adviser. Defendants are a married couple in their thirties and have three young children, the husband being a telegraph operator with whom "Grandpa Hawley" liked to visit at the Newport depot. This friendship ripened into a close attachment for the entire family at whose home Mr. Hawley was a constant visitor, eating his meals there whenever he could and upon one occasion at least, taking an extended auto trip with the family.

It is defendants' claim that Mr. Hawley in 1931 urged them to move to the property in question, stating the place would be theirs provided he had a home when he desired, but they were reluctant to do so and that only his continued requests resulted in the family finally moving into the premises in May of 1933. The record indicates that the deceased was foresighted enough to anticipate the present litigation because "on his own initiative" he called on the physician who had treated him professionally and intermittently during the 10 years of their acquaintance, informed him of his plans—why he intended to deed the property, etc., and requested a thorough physical and mental examination. Dr. Roach said that Mr. Hawley came alone to his office and further testified as follows:

"Based upon my examination of him at that time, I am convinced that he was in full possession of his mental faculties. He was perfectly normal mentally. I believe that he was possessed of his mental faculties to such an extent that he knew the extent of his property and who his natural heirs were. I questioned him along that line. I was convinced that he was as normal mentally as anyone else. Mr. Hawley was an average man and I do not think he was easily

influenced. * * * He had heart trouble and the natural infirmities of his age. He walked a little draggy and was slow in his locomotion."

Subsequently the deed was executed and Mr. Hawley moved to the Heaslip home where he died a few days later. The special administrator, immediately upon his appointment, filed a bill to cancel the deed upon the grounds of mental incompetency and undue influence. Plaintiff produced a number of witnesses who testified that the old gentleman's memory was failing in his latter days, that "he was quite feeble and childish like;" "he was not competent to transact business;" "his conversation was incoherent," etc. Defendants, a neighbor and a friend who boarded in the home at various times testified to the contrary. Letters from defendants to the deceased were introduced in rebuttal indicating, according to plaintiff, some attempt to influence the grantor to continue and extend the friendship. The trial court set aside the deed because of "undue influence practiced upon the deceased by flattery, endearments and cloying kindness on the part of the defendants to such an extent as to overcome the will and natural inclinations of the deceased."

While we are loath to set aside the findings of the trial court who saw the witnesses and heard their testimony (*Perry* v. *Coleman,* 255 Mich. 524, and *Navarre* v. *Raupp,* 267 Mich. 173), yet the object of the bill being to set aside a deed on the ground of incompetency on the part of the grantor and undue influence on the part of defendants, the burden of proving the charge by a preponderance of evidence primarily rests upon complainant, and if the testimony does not prevail in his favor or is so evenly balanced as to leave the question of doubt, his suit must fail. *Reagan* v. *Murray,* 176 Mich. 231, and authorities therein cited at page 237.

"Fraud, undue influence and mental incompetency are primarily questions of fact with the burden of proof resting upon them. As presented by this record fraud and undue influence are contingent upon the issue of the deceased's mental competency. In the absence of the latter even the claimed inferential evidence of the former disappears. Opportunity alone affords no inference." *Powell* v. *Pennock,* 198 Mich. 573, 580.

Courts are not permitted to make equitable distribution of property but are concerned only with giving effect to the legal acts of decedents. *Pritchard* v. *Hutton,* 187 Mich. 346.

The reluctant acts of defendants although containing evidence of friendship and love for decedent even coupled with some indefinite hope for future benefit are not sufficient to make a case of undue influence.

The old gentleman received *quid pro quo* and was canny enough to anticipate litigation by visiting his medical adviser before executing the deed. It is not strange that he should avoid a discussion with his business adviser as to this transaction, in fact, he seems to have taken some delight in doing pretty much as he pleased in the matter. The testimony of Dr. Roach is of sufficient character to weigh heavily in the balance and we cannot say that plaintiff has proven his charge by the preponderance of the evidence, for at least the testimony is so evenly balanced as to leave the questions of competency and undue influence in doubt and therefore plaintiff's suit must fail.

The decree is reversed and the bill dismissed, with costs to appellants.

POTTER, C. J., and TOY, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred.