## WROBLEWSKI v. WROBLEWSKI.

1. APPEAL AND ERROR—WEIGHT OF EVIDENCE—MENTAL COMPETENCY.
   Much weight should be given to the conclusions reached by the trial judge in a suit to set aside conveyances by elderly grantors to their son on the ground of mental incapacity of the grantors, where the testimony is in conflict, as the trial judge had the opportunity of seeing and hearing the witnesses.

2. DEEDS—TEST OF MENTAL COMPETENCY OF GRANTOR.
   The test of whether a grantor in a deed has the mental capacity to execute it is whether he could understand the business in which he was engaged, knew and understood the extent and value of his property and how he wanted to dispose of it and could keep such facts in mind long enough to plan and effect the conveyance in question without prompting and interference from others.

3. SAME—MENTAL COMPETENCY—BURDEN OF PROOF.
   Administrator of deceased father's estate and guardian of estate of mentally-incompetent mother *held*, not to have sustained their burden of showing mental incompetency on part of grantors at time they executed conveyances of all their real and personal property to defendant son who had theretofore provided his parents with care, attention and support in the amount of $160 per month and agreed to provide such care for the balance of the lives of the parents.

4. SAME—FIDUCIARY—BURDEN OF PROOF—EVIDENCE—VOLUNTARY CONVEYANCES.
   Son who stood in fiduciary relation to his parents and received from them conveyances of all of their real and personal estate

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error, §§ 896, 901.
[2, 3] 9 Am Jur, Cancelation of Instruments, § 16; 28 Am Jur, Insane and Other Incompetent Persons, § 67.
[3–5, 8] 50 Am Jur, Support of Persons, § 7 *et seq.*
[3–5, 8] Conditions, amount, and character of support contemplated by will, trust instrument, or contract providing for support of person. 101 ALR 1461.
[6, 7] 9 Am Jur, Cancelation of Instruments, §§ 25, 26.
[7, 8] 16 Am Jur, Deeds, § 57; 24 Am Jur, Gifts, § 3.

sustained his burden of proof that he did not violate his trust under evidence showing, among other things, that he had theretofore provided them with care, attention and support in the amount of $160 per month, agreed to continue it for the balance of their lives and was not apprised of their intention to make the conveyances .until after the parents had consulted their attorney with respect to the matter and were fully apprised of what they were doing.

5. SAME—VOLUNTARY CONVEYANCES—UNDUE INFLUENCE—FRAUD.

Record in suit by administrator of estate of deceased father and guardian of estate of mentally-incompetent mother to set aside voluntary conveyances of all of their real and personal estate to defendant son *held*, not to show any undue influence, fraud or misrepresentation on part of defendant.

6. CONTRACTS—CANCELLATION OF INSTRUMENTS—ADEQUACY OF CONSIDERATION—FRAUD.

Mere inadequacy of consideration, not accompanied by other elements of bad faith, will not warrant cancellation of a contract, unless so inadequate as to furnish convincing evidence .of fraud, or unless so grossly inadequate as to shock the conscience of the court.

7. DEEDS—PARENT AND CHILD—CONSIDERATION.

Parents have a right to convey property to one of their children without any consideration.

8. SAME—PARENT TO CHILD—CONSIDERATION—FRAUD—UNDUE INFLUENCE.

Voluntary conveyances of all real and personal property of grantor parents to one of their sons who had been providing them with care, attention and support in the amount of $160 per month and agreed to continue to do so for balance of their lives were valid, in the presence of evidence refuting fraud or undue influence on the part of the grantee.

Appeal from Wayne; Webster (Clyde I.), J. Submitted October 6, 1950. (Docket No. 58, Calendar No. 44,917.) Decided December 5, 1950.

Bill by Felix Wroblewski, general administrator of the estate of Vincent Wroblewski, deceased, and another against Walter F. Wroblewski and wife for

accounting and to set aside conveyances. Decree for defendants. Plaintiffs appeal. Affirmed.

*McInerney & Swaby,* for plaintiffs.

*Julius E. Allen (I. Goodman Cohen,* of counsel), for defendant.

BUSHNELL, J.   The late Vincent F. Wroblewski was a baker in Wyandotte, Michigan. On November 25, 1947, he and his wife, Jadwiga (Hedwig), entered into a written agreement with their son Walter. This agreement recited that Walter had for some time past provided care, attention and support for his parents in the amount of $160 per month, and that Walter was willing to provide such care for the rest of their natural lives. In consideration of Walter's agreement to so provide for them, his parents conveyed all of their real and personal property to him.

In June of 1947, Vincent F. Wroblewski "turned" his bakery business over to his sons, Felix A., Thaddeus G. (Theodore), Walter F., and Vincent, Jr. They continued to operate it as a partnership until March of 1949, at which time Walter acquired his brothers' interests in the business.

Vincent, Sr., died on July 20, 1949. Plaintiff Felix A. Wroblewski is the administrator of his estate. Plaintiff Frank L. Amprim is the guardian of Vincint's widow, Mrs. Hedwig A. Wroblewski.

On October 7, 1949, plaintiffs filed a bill of complaint, later amended, by which they sought an accounting of all moneys and properties received by defendant Walter F. Wroblewski and his wife, Sophia, and a decree setting aside certain conveyances. Plaintiffs claim that both Vincent and Hedwig were incompetent when they transferred their property to Walter. No testimony was produced to

justify a finding that Vincent, Sr., was incompetent. Three physicians testified regarding Hedwig Wroblewski's physical and mental condition. None was able to express an opinion based upon his own observation in 1947, the time the conveyances were executed. Dr. Vreeland saw her in 1944, 1945 and 1946, Dr. Comfort in 1945, and Dr. Pearman in 1949.

The trial judge, in considering the opinion testimony of the physicians and that offered by the various children and other witnesses, relied strongly upon testimony given by Wanda Mackey, a married daughter who returned home in 1945 to care for her parents. At the time of trial she and her family were still living in the home.

The trial judge said in part:

"Now, we have no medical testimony on the part of the plaintiffs as to her (Hedwig's) condition in 1947. We have, as I say, but these guesses. That might be sufficient and controlling, if it were not for actual testimony the other way. They both might have believed, Dr. Vreeland, looking ahead, that she would be mentally incompetent in November, 1947; and Dr. Pearman, looking backwards, that she was mentally incompetent in November, 1947. But to offset that, we have the actual testimony of Wanda (Mackey) and of the interpreter and of the notary as to the actual condition, and we have these other witnesses, all of whom testified as to her condition in 1947. All testified as to facts from which the court would be warranted in finding, notwithstanding the testimony of the other children and the guesses of the experts, that she was mentally competent at the time of the execution of these instruments.

"As I stated yesterday, the testimony of Wanda is very important. Counsel agrees with me that she probably was the key witness. From the testimony, she is the only one who would have a right to complain. I see no right of the plaintiffs to complain.

Wanda might have. She seems to be very conscientious, and notwithstanding the care she had given her parents over all of these years, and is still giving her mother, she was willing that it go that way because that was the way her parents wanted it. I really think that answer typifies Wanda.

"In order to decide for the plaintiffs on the facts, I would have to disbelieve Wanda. I am not able to do that. I believe she was telling the truth, and I believe that she is conscientious about it. Certainly, the defendant is greatly indebted to her. Without her testimony, the case might be different. I don't say that it would be, but it might be. Certainly, I can say that the case might be different if Wanda was the plaintiff, and the signatures had been secured by the defendant. If that was the kind of a case this was, Wanda would have a good case. But, again, we have no testimony here that the defendant got the parents to execute these instruments. The testimony is the other way, that the defendant did not have anything to do with it; Wanda had more to do with it than the defendant did. So in these cases where the person who gets the property is the active mind, the engineer in charge, the conveyances are frequently set aside. There is no testimony that this defendant was the moving party, and that he violated the natural trust that his parents would have in him. There is no testimony here that this defendant violated the fiduciary relationship that existed and brought about these signatures through fraud; that he got them against their will, and because of their mental incompetency to sign these instruments and leave this property to him. That is not this case."

Plaintiffs have appealed from a decree dismissing their bill of complaint and the imposition of an equitable lien on certain property to secure the performance by defendants of Walter's undertaking to pay his mother, Hedwig, $160 per month during her life-

time. We have been advised by counsel that Mrs. Wroblewski died on October 16, 1950.

Appellants contend, in substance, that the conclusions reached by the trial judge are inequitable, contrary to the preponderating testimony, and based upon incorrect principles of law.

The testimony is conflicting regarding Mrs. Wroblewski's mental capacity at the time the agreement in question was made and the several conveyances executed. Under the circumstances of the case, much weight should be given to the conclusions reached by the trial judge, who had the opportunity of seeing and hearing the witnesses. He felt that the facts in the instant case were comparable to those in *Re Littlejohn's Estate,* 239 Mich 630.

"The test of mental capacity of a grantor in a deed is set forth in the case of *Hayman* v. *Wakeham,* 133 Mich 363, where we said:

" 'The rule to be applied in this case, in reference to the mental competency of Richard Wakeham, has been declared many times in our courts, and is whether, at the time he executed the deeds in question, he had sufficient mental capacity to understand the business in which he was engaged, to know and understand the extent and value of his property, and how he wanted to dispose of it, and to keep these facts in his mind long enough to plan and effect the conveyances in question without prompting and interference from others.' " *Barrett* v. *Swisher,* 324 Mich 638, 641.

A consideration of the entire record requires agreement with the conclusion reached by the trial judge that plaintiffs failed to sustain the burden of proof of incompetency. See *Francisco* v. *Heaslip,* 273 Mich 444, 447.

We are unable to find any testimony to indicate that Walter was the moving party in the transac-

tion.  On the contrary, Wanda testified that Walter did not know about their parents' intentions until after the parents had discussed the matter with their attorney.  Anthony Klimowicz, a brother-in-law of Walter, acted as interpreter and witness for Vincent at his request.  He testified that the Wroblewskis discussed the situation at length with their lawyer; that after the agreement was drawn it was read to them and its effect fully explained.  He was of the opinion that both of them fully understood what they were doing and that it was their free act and deed.  Vincent's lawyer (Alex Glick) was in California at the time of trial and unavailable as a witness.

Walter stood in a fiduciary relation to his father and mother, and the burden was upon him to show that he did not violate his trust.  *Scheibner* v. *Scheibner,* 220 Mich 115.  We are satisfied that he met that burden through the testimony of his sister, Wanda, and other witnesses.

The record does not show any undue influence, fraud or misrepresentation.  The conveyances were voluntary acts of the grantors.  Plaintiffs' argument that the arrangement was neither fair, equitable, nor conducive to the interest of the grantors is answered by what we said in *Olson* v. *Rasmussen,* 304 Mich 639, 643:

"Mere inadequacy of consideration, not accompanied by other elements of bad faith, will not warrant cancellation of a contract, unless so inadequate as to furnish convincing evidence of fraud (*Van Norsdall* v. *Smith,* 141 Mich 355), or unless so grossly inadequate as to shock the conscience of the court (*Hake* v. *Youngs,* 254 Mich 545)."

The father and mother had the right to convey property to one of their children without any consideration.  In the presence of evidence refuting fraud

or undue influence, the court will only give legal effect to their acts. *Pritchard* v. *Hutton,* 187 Mich 346, 355. See, also, *Terry* v. *Terry,* 170 Mich 330, 337.

The decree is affirmed, with costs to appellees.

BOYLES, C. J., and REID, NORTH, DETHMERS, BUTZEL, CARR, and SHARPE, JJ., concurred.